Good morning. My name is Carol Powell-Lexing and I represent the plaintiff Jalen Sewell regarding the dismissal of his suit relative to a 12b6 motion. It is our position that we have met we have more than met the standards that's required of Rule A in Ashcroft in regards to this particular claim. In other words, whether or not our our complaint is plausible enough, whether or not our factual allegations support our legal conclusion. In other words, when you look at the face of the complaint, can the court make a reasonable emphasis that the Monroe City School Board is liable for the misconduct? And the misconduct in this particular case is that all African-American male students were sent to the office because of dye in their hair. You had other students, white students, female students, black and white female students, but they were not sent to the office because of their hair was dyed. You have a situation where all the African-American males were sent to the office and Mr. Jalen Sewell happened to be one of those African-American males. He was prohibited from going to class and the white students and the other female students who had dye in their hair, they were not prohibited from going to class. Are you, I couldn't tell for sure, but you sued originally sued individuals and the school board. On appeal, it appears you're only continuing your claims against the school board. Is that correct? We're only continuing our claims against the school board because we actually sued the individuals in their official capacity too, which is equivalent to the school. Right. So we're not, we don't have any claims against defendants in their individual capacities. All we're talking about is the school board. That's correct. And you agree that when you're suing the school board, you have to show you gave notice to the school board for every one of your claims. That's correct. Okay. How did you give that on every one of your claims? In this particular case, Ms. Bonnie Kirk, who was the original complainant, however, when her son became the agent majority, she was substituted, he was substituted out as the major plaintiff. Ms. Kirk met with the principal, the dean, the superintendent, the president of the school board, one of the school board members, and with one of the officers, child welfare officers. In that meeting, she discussed and she recorded, which the complaint states in there, she, she recorded her conversations that she had with those individuals, which would be considered the appropriate persons for complaining to, where she said she felt that her child was being discriminated against because he had dye in his hair and no other students, no white students and no other female students, were facing the same adverse reactions that he was subjected to. Right, so of that group you listed, the only person that is part of the school board, you mentioned the president of the school board. And another member of the school board, Brandon Johnson, that's incorporated, that's in the complaint. Do you consider the superintendent part of the school board? Is the superintendent part of the school board? The superintendent is not a part of the school board, but the superintendent is the person that the statute allows to hire and fire. He is the instructional leader and CEO with the primary responsibilities for personnel action. I'm just trying to determine who is on the school board. So you're saying you agree then the only school board members are the president of the school board and another member? Well, she told two more members. She told Brandon Johnson and she told the president of the school board, Rodney McFord, and she also told other individuals. Again, I'm focused on the school board and this notice that's required to the school board, you're saying occurred at one meeting with others in the room? Yes, not necessarily one meeting, but on several other instances with, you say you're focusing on the school board, with Mr. McFarland and Mr. Johnson, yes. Right, so is there any other instance where any form of notice was given to any member of the school board? Yes, she filed a grievance. When did she file her grievance? She filed her grievance after her son, Mr. Sewell, was suspended as a result of being retaliated because she reported that he had been discriminated against. Her grievance with the school board that she filed, did that have to do with the hair color or did that have to do with his being suspended? It's all interrelated. Is it included in the grievance? Yes. Did the grievance have to go through some kind of administrative process by which all the board members or others would become aware of the claims? Yes, Your Honor. And that preceded the lawsuit? Yes, she filed that on November the 29th of 2016, which the lawsuit wasn't filed until November the 8th of 2017. She filed that right after, what, three months after the initial acts which started on August the 15th of 2016. Now, your 1981 claim, what elements are underlying deprivations required by 1981 are you claiming occurred here? In the 1981 and the 1983, we're basically contending that let's find it here we're continuing that intentional discrimination was alleged in our original complaint in order to bring it under 1981 and 1983. That's what we're contending, that the complaint shows shows the facts based upon the intentional discrimination in order to bring it under 1981 and 83. Right, 1981 formally was just deprivation of the right to engage in contracts, but then it's been expanded, such as the full benefit of all laws and proceedings, etc. Which underlying required elements of 1981 do you claim applies in this instance? Because we're not talking about a contract, so which ones? We're talking about, for instance, when the school retaliated against him and did not allow him to participate in the football activities and go on trips that he was denied benefits and privileges. I understand, but which element of 1981 would that satisfy? Would that satisfy, for example, full and equal benefit or light punishments? I mean, you've got to have some statutory basis under 1981. What is it? It's very rare for 1981 to be raised in an action of this type, so I'm just trying to know what you're focused on. That he was denied the benefits or the privilege of participating in these educational activities that was a result of the retaliation by not allowing him to go to those school activities. It was prohibited from those school activities. Shift for a moment. The part of the ruling below was that the claims were time-barred, so help us understand within the chronology of this court held several of these claims were time-barred, so help us if you can do it succinctly, which aren't time-barred and the basis upon which you say they're not. Well, it is our position that none of the claims are time-barred because of the continuing violation theory. The original actions, if you look at the complaint states that it started on August the 15th of 2016. During that particular time, there were instances or a series of retaliation, harassment that one of the school officials over a protracted period of time continued to berate and harass Mr. Sewell as it relates to the guy in his hair. He intimidated him. He called him names. He called him names in front of the students and in front of other teachers. So you have that particular act that started within that time period that was a continuation and then lo and behold on November the 14th of 2016, you have another action where they retaliated and Mr. Sewell was suspended from school and was subjected to expulsion at that particular time. The suit was filed on November the 8th of 2017. The acts from the second incident occurred on November the 4th of 2016, which put that one act within that time period that the law allows for the continuing violation theory. I hope I answered the court's question as it relates to the time periods regarding the reason why it's not prescribed that first discriminatory act because in that first discriminatory act, you have a series from those acts that continue within that particular time period of August starting with August 15th of 2016, whereby retaliation took place within three months later, November the 14th of 2016. So you have these series of discriminatory acts whereby he was subjected to a hostile environment. He was berated. He was called names. He was continuous single out when no other students, nor the white students, nor the female students were single out and made a part of this ridiculeness because of the dye in their hair. These discriminatory acts that originated from August 15th of 2016, they continue throughout November, at least throughout November the 30th of 2016. Does your complaint or are you asserting, you claim discrimination, etc., but are you basically asserting two claims, hostile environment and retaliation? We are asserting discrimination, hostile environment, retaliation, and of course our claim under the section 1983. And 1981. Yes, sir. So the first day when they're called into the office, it was all African American males in the school. Not in the school. With the hair. Yeah, all African American males were sent to the office for dye in their hair. Right, right. So then what, but then after that it sounds like only your client was subject to the continuing harassment. He was a part of the group that was sent to the office as a result of dye being in his hair. Right, but my question is, was the whole group. The whole group was sent. In this continuing pattern of harassment. Right, and we don't really know, we don't really know what the other ones actually agreed to or not agreed to, but they targeted Mr. Sewell by saying, if you take the dye out of your hair, then you can come to class. But they did not, as far as we know, they did not tell the other students or say anything about them. They weren't even sent to the office as it relates to dye being in their hair. Only African American males were sent to the office. Only African American males were stopped in the hall on a continuous basis and asked about their hair. And Mr. Sewell being one of those individuals. So you have the intentional discrimination because you have rounded up only African American males who had dye in their hair. You have not rounded up everybody with dye in their hair. You didn't ask that the white students with dye in their hair or the female students come to the principal's office. You didn't deny them the right to come to class because they had dye in their hair, but you denied Mr. Sewell the right to come to class because he had dye in his hair. You didn't, and the complaint says all of this, you did not, um, uh, Mr. Rankin did not berate and pick on any other and all the rest of the students with dye in their hair. He only targeted this one African American male with dye. I guess that's what I'm getting at. Did Rankin harass other, the other African American males who had dye who were called into the office that first day? They were all calling the office. I got that. Right. And Mr. Sewell basically was harassed. Now Mr. Rankin did single out African American males and stop them in the hall. In addition to Mr. Sewell, on a continuous basis, he harassed Mr. Sewell. He ridiculed Mr. Sewell on a continuous basis. He intimidated him. He fostered a hostile environment with Mr. Sewell by isolating him as a student. There's nothing in the complaint about the other students that you mentioned? Uh, yes, sir. That is, um. Well, I'm talking about in response to Judge Costa's question, is there anything in the complaint beyond the initial grouping that went into office? Are there other allegations in the complaint that refer not only to Mr. Sewell, but to the other African American males who were originally brought to the office? There are, um, allegations in the complaint that says that, in the first paragraph that says that. Well, you can look at it and pick that part back. If you've reserved your time for rebuttal, it's not a point to bog down on, but it's in there. It's in there, Your Honor. In addition to that, the Department of Education. Okay, but you got a red light. I was trying to let you finish the answer to the question at a stopping point, but you've reserved your rebuttal time, so let's hear from Mr. Lawrence. Good morning, Your Honors. May it please the Court, I'm Doug Lawrence. I represent five defendants in this case, including the Monroe City School Board. Mr. Lawrence, I'm not sure I saw it. Was Mr. Rankin white or black? Black. The school principal, white or black? White. The school board president, white or black? Black. And the school board member, white or black? Black. All right, so of the four individuals, one was white, three were black. Yes, sir. All right. Your Honor, as I heard the argument that was just presented about students being called to the office, the lawsuit doesn't say who sent all African-American students to the office. It does not say that any of the defendants specifically said, send all African-American students to the office, to the extent that that actually happened. So I wanted to address that issue right off the bat. Secondly, is it disputed that the group alleged the African-American males with dye in their hair, I mean, is it disputed that there was that group that went to the office by whoever called them? We are unable to say that as of at this time, Your Honor. We haven't. So there's no acknowledgement that any of that ever happened, is that what you're saying? Yes, sir, that's correct. Okay. And to the extent that it did happen, we're saying which among the five defendants that I In the petition or in the complaint, it is noted that having two-toned hair, two colors of dye, multiple colored hair was the issue with Jalen Sewell. No other person is alleged in the complaint to have had multiple colored hair with multiple colors of dye, only Jalen Sewell. In the complaint, it indicates that there was a very specific conversation that Jalen Sewell's mother, the original plaintiff in this case, Bonnie Kirk, had in a meeting with the superintendent of schools in the hallway at the school where the superintendent noted specifically that it was the multi-colored hair, the outlandish hairstyle, he phrased it, of Jalen Sewell that was the issue. I would also note that that was the one and singular issue pointed out in the complaint that the superintendent was apprised that there was an issue at all. That is very important because as I have briefed, the superintendent is the only authority in the case who would be an appropriate person who had corrected, who had the ability to take corrective action to the extent that there was a problem in this case. Why? Because in the complaint, Whitney Martin and Roosevelt Rankins are identified as the discriminating parties. They could not be appropriate persons because they were the identified in the complaint. Complaining to the school board was meaningless for the following reason. Effective July 1st, 2012, Title 17, Section 81, which we've cited in our brief, of the Louisiana Revised Statute placed total control of all personnel matters into the hands of the superintendent, completely stripped that power from school boards. So from July 1st, 2012 forward, the only person that would have authority to impose any type of corrective action, be it on Rankins or on Martin, would be the superintendent. That's important for the following reason. The only indication of notice in this case happened in the hallway on August 16 of 2016, according to the complaint. You said that that meeting is alleged in the complaint, the hallway meeting with the superintendent? Yes, sir. If you would look at... Do you know where exactly? I've been looking. Page four of the complaint should contain that allegation. In that perchance hallway meeting, yes sir, is where the discussion took place between the superintendent and the original plaintiff, Ms. Bonnie Kirk, about Jalen Sewell having multiple colors of dye in his hair. The only other matter that was mentioned to the superintendent on that date by Ms. Kirk is that she observed three white students who had dye in their hair in the hallway. But notice, Ms. Kirk said that she saw three white students with dye in their hair, not multicolored dye in their hair like Jalen Sewell, which is what the problem was, which is what the superintendent pointed out in that hallway meeting. It is also important to note, as alleged in page four of the complaint... Was dyed hair allowed but not multicolored dyed hair? Was that the school policy or the policy at issue? Yes, sir. So if his hair otherwise would be black but he had it blonded here, that wouldn't have been a problem? Having one color of dye would have been acceptable? If his hair normally was black but it's blond up in here, that wouldn't have been a problem? But if he had blond and purple and green or whatever... Yes, sir. That's when you're talking about multicolored, that's what you're talking about? Correct, Judge Stewart. All right, so was there a school policy or some other policy that expressed allowed dyed hair but disallowed multicolored hair? On the date in question, the superintendent stated that there was a policy against having outlandish hairstyles. That's what's in the complaint. That was the statement attributed to the superintendent as he explained the issue to Ms. Bonnie Kirk, the original plaintiff. Ms. Kirk, your son's hair is a problem because it is outlandish. It is outlandish because it has multiple colors of dye. That distinguishes your son from any other student that has dye in their hair because they have only one color. So did he, as part of saying that, say and it's in violation of the school policy, the rule, I mean besides saying it's outlandish, I mean he said and it's in violation of the rule. Yes, sir. So he told her that? Your Honor, I cannot represent or misrepresent as the case may be exactly what it was. Well, you're saying he said he told it was outlandish and all that, which to me is a little different than saying there's a rule that says you can have your hair dyed. His is in violation of the rule because it's multicolored. I'm saying are you saying she was told that or according to the complaint, that is what the superintendent indicated to Ms. Kirk. The complaint says that the superintendent indicated that there was a policy against having outlandish hairstyles and that it was the multiple colors of the dye that made the hairstyle outlandish. That was the explanation given in the complaint. Now, Your Honor, this is extremely important because other than this one exchange in the hallway on August 16, 2016, there is no other indication in the complaint or in the two amendments to the complaint that the superintendent was apprised of any other issue notwithstanding what's alleged in the lawsuit or in the complaint. Well, counsel opposite said that the plaintiff filed a grievance. I'm not sure what that means. So it was a grievance filed based on, you know, school board regulations or whatever, whatever. So it was a grievance filed to which the superintendent would have been apprised and, you know, it ran its course. Your Honor, I am not, I am not certain. I do not know the answer to that question. I do know that that is alleged in the complaint. Well, if she filed a grievance and assuming from what you said in the statute, the superintendent is the acting person, would that grievance be noticed for purposes of this lawsuit? Perhaps it would or perhaps it should be, Your Honor, but what I would direct the court's board is inconsequential for the purposes of whether a plausible claim has been asserted in this particular instance for the following reason. Because the school board would either individual school board members or collectively would not be the appropriate person or the appropriate party that would have actual knowledge of intentional discrimination and that would have the power to institute corrective action. Why? Because it's the actions of Martin and the actions of Rankin, Rankins, that are at issue. And if that's true, under Title 17, Section 81, only the superintendent has the power to put those individuals in check. But if a grievance is filed, you would think the superintendent knows. Now, I don't, I don't know where, if a grievance is, in fact, alleged, but wouldn't a superintendent know if a grievance was filed? Yes, sir, he would. He would. If that is the question, the answer is obviously yes, notwithstanding the fact that if it comes before the school board. Why don't you know the answer to whether there was a grievance filed or not? You're representing the board and superintendents. I mean, it either was or wasn't. Your Honor, I apologize. I've been representing the board for over 22 years. I've handled any number of cases. I honestly don't know the direct answer to that question. Could I find out? Yes, but standing here today. But is it alleged in that, because what we're dealing with is the complaint on Rule 12b-6. Does she say that, does the complaint say that the superintendent received the grievance? I did not see that in the complaint, Your Honor. I saw in the complaint that a grievance was filed against, was filed with the board, not that it was filed with the superintendent. I see where it says a complaint was filed with the Department of Education. Yes, sir. I'm not sure. We'll just have to look at it and see what it says about a school board grievance. Let me ask you about the statute of limitations. She says there's a continuing violation doctrine, which the Supreme Court has recognized for hostile work environment, or in this case, hostile school environment claims. Why wouldn't a continuing violation doctrine apply? Your Honor, I am not aware of any authority that would extend it to this particular instance where we're dealing with Title 6 allegations, Title 9 allegations. But doesn't the case law usually say we just borrow Title 7 for, you know, McDonnell-Douglas? You borrow all these things from Title 7. Yes, sir, it does. Now, in this particular instance, the question becomes, what are those continuing violations? What are those allegations? And again, if you come upon what they are... I think she would say it's Rankin continuing to harass and calling him names and things like that. Yes, sir. Then the question becomes, was the superintendent apprised of... I know that's an issue, but I'm just wondering about the limitations. I know it's a separate issue about notice. I get that. Now, what about the or not being able to go to the football game? Isn't that within the time period? It is. Based upon what is alleged in the complaint, that is true. Now, interestingly enough, the grounds that involve what is alleged in the complaint regarding the events of, I believe, November of 2016, are distinguishable from the earlier grounds or the earlier allegations in August of 2016. Note, too, and references made to the attachment from the Office of Civil Rights regarding that particular event where even the Office of Civil Rights, even OCR, came to the conclusion that there was a valid reason or a reasonable basis for the school district in that instance involving November 2016 where there was a suspension or where there was disciplinary action taken against Mr. Sewell for it to take that action because outlined in the facts was an incident that involved supposedly his assault of a female student on the school campus. And so the actions of the school district, as described by the Office of Civil Rights, was in conjunction with that incident where a female student was assaulted on the school campus. Hence, his inability to participate with the football team was based on that incident, not the separate incident, not the matters going back to August of 2016, even though that is what's being argued in this case. I do now see it's in this amended complaint. It's hard because it incorporates the other one on page two. It says plaintiff filed a grievance with the school board. I do see that now. It's in the amended complaint. Yes, sir. And for the balance of my time, if there's nothing else that I can emphasize on this particular point, again, in light of that important legislative change that took effect on July 1st, 2012, filing a complaint with the school board, I would understand why a student or a parent perhaps would do that, but then ultimately the school board would be powerless, powerless to take any action against an employee. Why? Because the explicit language in Title 17, Section 81 says that the school board will delegate all authority to the superintendent regarding personnel matters. When you filed the motion to dismiss 12B-6, I thought that was based on plausibility, etc., etc. Is part of your urging below to dismiss? Were you urging then, okay, she sued the wrong party, yada, yada, I mean, what you're arguing now? No, sir. I did not raise that issue earlier, Your Honor. My raising that issue now is to respond to the matters that have been raised at present and to answer or to explain why it is inconsequential or it should be considered inconsequential by this court of whether or not a grievance was filed with the board. Meant only to answer the matters that are raised today before. But as relates to the superintendent who you focused on, to the extent the grievance was filed or whatever and the superintendent was aware of it, does that make a difference as far as notice goes or not? Well, there is a question of what was in the grievance. Does the grievance deal with what happened in August of 2016? And with some level of precision, what does the grievance deal with? That's really one of the core problems with this case from the inception. Many allegations, but what, aside from the conclusions, what are the facts that map to demonstrating an entitlement to relief under Title VI, under Title IX? What are the 1983 claims? What are the 14th Amendment claims? Also, we saw a reference to the Family Educational Rights and Privacy Act, FERPA, in the amended complaint, saying that we violated FERPA. Unless there is a disclosure of educational records, there is no violation of FERPA. She's not urging that on appeal. Yes, sir. It is an example, however, of how in many instances arguments can be misplaced. I found it interesting, and I don't know that I just don't recall seeing it before, that when the first report and recommendation was prepared, instead of appealing to the district judge and filing objections, instead Plaintiff amended the complaint. Is that the way it happened? Yes, sir. There were two amendments. So we're now on the third operative complaint, and she is not seeking to amend on appeal. Yes, sir. That is my understanding. Your Honors, I thank you for your time. Thank you so much. All right. Thank you, Mr. Lawrence. Ms. Lexing, you've got rebuttal. Your Honor, I can address the issues of Mr. Sewell only had blonde hair and the rest of his hair was black, two-tone. And the petition specifically states that the superintendent questioned the two-tone. They were trying to follow the Odom-Beckham trend. Are you referring to a football player? I'm referring to Mr. Sewell. No, you said some Beckham. Who is Beckham? Oh, yes, he was a football player with the Cleveland Browns that got traded to New York, if I got that right. Opposite of your club. Right, right. But the reason that Mr. Lawrence doesn't know anything about the grievance because he didn't respond to it when he got it. That's one reason. Wait a minute. Is that in the complaint? Well, he brought that issue. No, ma'am. Is that in your complaint? The issue of whether or not he didn't respond. No, ma'am. I'm asking you. Do you say in your complaint that they did not respond to the grievance? I do not say that. Okay. Well, let's stick with the complaint because that's all we have before us. Yes, sir. The Department of Education, Office of Civil Rights Report is incorporated, and within that report, they interviewed, they did a very thorough investigation. They interviewed teachers. Teachers said that students had dye on the tip ends of their hair that could be fiery red and brownish gold, which meant that their hair was two-toned also. So, therefore, it didn't seem like it was a problem with the school because the school dress code that Mr. Superintendent Vendrine was making reference said that the dress code provides that hairstyles and hair dyed outlandish colors, which cause a disruption to the educational process, shall not be allowed. Now, was there a school policy or dyed hair, but you can't have multicolored hair? No, sir. There's no such policy exists. Absolutely not. An appellate didn't even address that. If it was one, he didn't address that. There's absolutely no policy at all. So, if there was some type of outlandish, I mean, everybody looked alike, so I don't know how that could be outlandish in the particular issues here. But as it relates to actual knowledge, Miss Kirk, and you will find in the Department of Education report, Miss Kirk recorded her conversations with the superintendent, with every individual, every official that she had a meeting with. She recorded those conversations and told them she felt that her son had been discriminated against. Her son has been retaliated against, and yes, that is in the complaint. All right. What is your response to the fact that notice has to be given to the superintendent as opposed to given to the school board? My response is that she gave notice to the superintendent when she had the discussion and recorded the conversation where she's telling him that she felt that her son was being discriminated against before the grievance. So, are you contending that notice was given, so you're not saying notice was given to the superintendent about the grievance, that's not your complaint? I'm saying notice, that is not in my complaint, but I'm saying, yes it is, I'm sorry, because the Department of Education have it in their report that she recorded that conversation also of the notice being given about the grievance. That is in. Two conversations with the superintendent? She had two conversations with the superintendent, the principal, the dean of students who was causing the problems, the president of the Monroe City School System. She had, she recorded all her conversations, even at the school board meetings, she recorded her conversations. Now, the court asked a question, this, the, in the report and recommendation, the original one, the magistrate judge requested or said that if we wanted to amend our report, we could do so. So, this is only, this is the first amended complaint, this is not the second or the third amended complaint. This is the first, we amended our complaint one time as it relates to the language that the original complaint, we made reference that the Office of Department of Education had, excuse me, the Office of Department of Education had launched an investigation and concluded that the Monroe City School Board discriminated and retaliated against plaintiff in violation of Title VI and Title IX. That was in the original complaint. She gave leave for me to amend the those facts to show whether or not that we had alleged sufficient facts to support our theory of intentional discrimination. And as our position that we did, if you take in consideration or if you look at the face of the complaint, you will see that we allege all the facts, the actual knowledge, whether or not there was discriminatory intent. All the issues, we have raised those in detail with factual wise in our complaint, amended complaint, and in the Office of Department of Education report, which is incorporated as facts in our complaint. They allege specifically plausible facts. You have the, you've got to relate, you attach to the last active complaint the Department of Education report. Is that what you're saying? Yes, sir. It's part of your that's leading to 12 BC. Okay, I'm just asking. I think it's 169 of the record that we attach all of it and we incorporate it by reference to that. We incorporated that in there and that's record page, I believe, 169. All right, thank you. Did you have a question? Did you? Okay, thank you, Ms. Lexing. You've got a red light. Thank you, Ms. Lexing and Mr. Lawrence for your briefing and argument in the case. We'll take a hard look at it and figure it out. The case will be submitted along with the other cases that